# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS E. KOSCIOLEK,

    Plaintiff,

v.

WILKES-BARRE FIRE FIGHTERS
ASSOCIATION LOCAL 104, et al.,

    Defendants.

CIVIL ACTION NO. 3:04-CV-1920

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are cross-motions for summary judgment filed by Plaintiff Thomas E. Kosciolek ("Plaintiff") and Defendants City of Wilkes-Barre (the "City"), Thomas M. Leighton ("Mayor Leighton"), Jacob Lisman ("Chief Lisman") (collectively "City Defendants"), and Wilkes-Barre Fire Fighters Local 104, International Association of Fire Fighters, AFL-CIO ("Local 104") (collectively "Defendants"). (Docs. 61, 64, 71 and 76.)  For the reasons stated below, Plaintiff's motions will be denied. Defendants' motions will be granted as to Count I of Plaintiff's Amended Complaint.  The Court has jurisdiction over Count I of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1331.  The Court will decline to exercise its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Counts II and III of Plaintiff's Amended Complaint, and will dismiss these claims without prejudice.

**BACKGROUND**

**I. Factual Background**

While the Court is presented with cross-motions for summary judgment, because the Court will grant summary judgment in Defendants' favor, the Court will accept Plaintiff's version of the facts and view them in the light most favorable to him.

Plaintiff was hired as a firefighter by the City in 1977. (Kosciolek Dep. 9:21, Aug. 17, 2006, Doc. 70.) Ninety (90) days after his hiring, Plaintiff became a member of Local 104, the union that represents the City firefighters. (Kosciolek Dep. 73:23-25.) Plaintiff was employed at the rank of private from 1977 until 2000. (Kosciolek Dep. 11:11.) In 2000, after having sought a promotion on multiple occasions, Plaintiff was elevated to the rank of Captain. (Kosciolek Dep. 14:19-17:17.) However, in 2001, Plaintiff was demoted back to private after Local 104 filed a grievance over his promotion. (Kosciolek Dep. 21:9-22:1.) Then, in 2002, Plaintiff was appointed to the rank of Assistant Fire Chief by Thomas McGroarty, then the Mayor of the City. (Kosciolek Dep. 17:25; 25:25-26:2.)

In 2003, the office of Mayor of the City was up for election. (*See* Kosciolek Dep. 31:23-25; 32:17-20.) The incumbent Mayor McGroarty was challenged by Thomas M. Leighton, the current Mayor of the City. (*See* Kosciolek Dep. 31:23-25; 32:17-33:5.) Prior to the Spring Primary, Plaintiff heard rumors floating around the firehouses that, if Leighton were elected Mayor, the Fire Chief and Assistant Fire Chiefs "were going to be demoted and thrown out." (Kosciolek Dep. 33:3.) Hence, despite Mayor McGroarty's appointment of Plaintiff to Assistant Fire Chief, as well as the allegiance Plaintiff felt toward McGroarty because of this, Plaintiff purchased tickets for and attended a Leighton

2

campaign function to show that, if Leighton were elected Mayor, Plaintiff would support him. (Kosciolek Dep. 32:4-16; 34:6-12.) Leighton beat McGroarty in the primary and then won the general election. (*See* Kosciolek Dep. 35:2-14.)

On November 26, 2003, Plaintiff and other Assistant Fire Chiefs received a letter from then Mayor-Elect Leighton. (Kosciolek Dep. 41:17-18.) In the letter, Leighton informed Plaintiff and the other Assistant Fire Chiefs that their positions were subject to appointment by the Mayor. (Letter from Thomas M. Leighton, Mayor, City of Wilkes-Barre, to Thomas E. Kosciolek, dated November 26, 2003, Doc. 78-9, "Leighton Letter".) As such, Leighton stated that he was opening their positions to other candidates. (*Id.*) Leighton did, however, invite Plaintiff and the other Assistant Fire Chiefs to apply for their positions. (*Id.*)

Plaintiff accepted Leighton's invitation to apply for the position of Assistant Fire Chief. (Kosciolek Dep. 41:24-42:1; 44:7-8.) Plaintiff submitted a resume (Kosciolek Dep. 44:14-20) and was interviewed in January of 2004. (Kosciolek Dep. 44:25-47:15.) During the interview process, Plaintiff continued to act as and was paid as an Assistant Fire Chief. (Kosciolek Dep. 45:18-22.)

Then, in February of 2004, Chief Lisman called Plaintiff into his office (Kosciolek Dep. 48:24-25) and told him that he had "some bad news for you. You weren't picked by the [mayoral] transition team. So you're either going to be demoted or retire." (Kosciolek Dep. 49:2-4.) Chief Lisman even offered to type up a retirement letter for Plaintiff. (Kosciolek Dep. 110:2-4.)

On February 11, 2004, Plaintiff filed a grievance with his Local 104 union representative, Michael Bilski, demanding to know why he was "being demoted to private

without a reason or a hearing." (Kosciolek Dep. 54:15-18; 81:25.)  Plaintiff also filed a second grievance based upon the calculation of his pension. (Kosciolek Dep. 55:7-12.)

On February 19, 2004, Chief Lisman responded to Plaintiff's grievance pertaining to his impending demotion, rejecting it because, as of that date, Plaintiff was still an Assistant Fire Chief. (Letter from Jacob Lisman, Fire Chief, City of Wilkes-Barre, to Thomas Makar, President of Local 104, dated February 19, 2004, Doc. 78-11, "Lisman Letter".)  Plaintiff, however, argues that his grievance was not fully pursued by Local 104 because Thomas Makar, President of Local 104, was interested in becoming Assistant Fire Chief, and knew that positions would become available due to Plaintiff and others being forced to retire. (Kosciolek Dep. 69:10-70:16.)  In fact, Makar was appointed Assistant Fire Chief by Mayor Leighton after Plaintiff was forced to retire. (Kosciolek Dep. 63:13.)

Plaintiff served as an Assistant Fire Chief until February 28, 2004, the effective date of his retirement. (Kosciolek Dep. 61:16-23; Letter from Thomas E. Kosciolek to Christine Jensen, Human Resource Director, City of Wilkes-Barre, dated February 27, 2004, Doc. 78-12, "Retirement Letter".)  Up until Plaintiff's retirement, Plaintiff acted as and was paid as an Assistant Fire Chief. (Kosciolek Dep. 62:10-18.)  Plaintiff chose to retire because his pension, which is calculated based upon his salary, would have been reduced had he been demoted to private. (Kosciolek Dep. 56:22-24; 78:18-80:2.) Plaintiff also retired, in part, to avoid the humiliation he would feel if he were relegated to the position of private. (Kosciolek Dep. 80:5-8.)

Plaintiff's employment as an Assistant Fire Chief was governed by the Collective Bargaining Agreement ("CBA") between Local 104 and the City. (Doc. 78-13.) Plaintiff avers that, under the CBA, he can only be fired or demoted for "just cause." (*See* Article 27 of the CBA, Doc. 78-13 at 30.)

**II. Procedural Background**

On August 27, 2004, Plaintiff filed his Complaint. (Doc. 1-1.) Plaintiff then filed an Amended Complaint on September 22, 2004. (Doc. 5.) Therein, Plaintiff alleged that Defendants deprived him of his constitutional rights[1] under color of state law, in violation of 42 U.S.C. §§ 1983, 1985 and 1986, by forcing him to retire (i.e., a "constructive discharge"). (Doc. 5 ¶¶ 6-23.) Plaintiff also asserted a claim against Local 104 for breach of its duty, as his union, of fair representation. (Doc. 5 ¶¶ 24-25.) Lastly, Plaintiff claimed that the City breached multiple provisions of the CBA. (Doc. 5 ¶¶ 26-31.)

Local 104 and City Defendants each moved to dismiss Plaintiff's Amended Complaint. (Docs. 7, 11.) On August 9, 2005, the Court granted Defendants' motion as to Plaintiff's section 1985 and 1986 claims. (Doc. 42.) City Defendants then filed a second motion to dismiss. (Doc. 43.) On August 16, 2005, the Court granted City Defendants' motion insofar as they sought dismissal of Plaintiff's claims against Mayor Leighton and Chief Lisman in their official capacities. (Doc. 49.)

---

[1] Plaintiff's Amended Complaint cites the First, Fourth and Fourteenth Amendments. (Doc. 5 ¶ 1.) However, Plaintiff fails to specify how his First or Fourth Amendment rights were violated. Rather, Plaintiff focuses entirely on the lack of cause, or a hearing, for his alleged constructive discharge. Indeed, Plaintiff's Brief in Support of his Motion for Summary Judgment against City Defendants only addresses procedural due process. (Doc. 63-1 at 18.) As such, the Court construes Plaintiff's Amended Complaint as only claiming a violation of procedural due process. Even if Plaintiff did raise these claims in his Amended Complaint, because he ignored them at summary judgment, they are deemed waived. *Scott v. Beard*, Civil Action No. 3:02-CV-0691, 2006 WL 2645150, at *4 (M.D. Pa. Sept. 14, 2006).

On September 19, 2006, Plaintiff moved for summary judgment against both Local 104 and City Defendants. (Docs. 61, 64.)  Thereafter, on September 20, 2006, Local 104 filed a Motion for Summary Judgment. (Doc. 71.)  City Defendants then filed a Motion for Summary Judgment on October 2, 2006. (Doc. 76.)

These motions are fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

**DISCUSSION**

**I. Plaintiff's Procedural Due Process Claim**

To establish a claim under section 1983 for deprivation of procedural due process, a plaintiff must prove that he was deprived of a property interest under color of state law and the procedures available to him did not provide him with due process. *Dykes v. Southeastern Pa. Transp. Auth.*, 68 F.3d 1564, 1570 (3d Cir. 1995).  Here, Plaintiff bases his procedural due process claim upon his alleged constructive discharge.

Employee resignations and retirements are presumed to be voluntary.  *Lehany v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999) (citing *Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992)).  "This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was

involuntarily procured." *Id.* "If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights." *Id.* (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1567 (11th Cir. 1995); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988)).

Under Third Circuit jurisprudence, "a resignation will be deemed involuntary (i.e., deemed a constructive discharge) and will thus trigger the protections of the due process clause, and form the basis of a [section] 1983 due process claim, under only two circumstances: (1) when the employer forces the employee's resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.10 (3d Cir. 2006) (citing *Lehany*, 183 F.3d at 228). To determine whether a retirement is involuntary, the Court must look at all of the circumstances surrounding Plaintiff's retirement. *O'Connell v. County of Northampton*, 79 F.Supp. 2d 529, 533 (E.D. Pa. 1999). The issue is whether Plaintiff reasonably believed that he "had no other choice but to quit." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000); *see also Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004). "[T]he assessment [of] whether real alternatives were offered is gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may perceive his only option to be resignation . . . is irrelevant." *Stone,* 855 F.2d at 174; *see Christie v. United States*, 518 F.2d 584, 587-88 (Ct. Cl. 1975). "[T]he mere fact that the choice is between comparably unpleasant alternatives . . . does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary." *Stone*, 855

F.2d at 174.  This is so because the fact remains that a plaintiff faced with uninviting alternatives still has a choice. *Christie*, 518 F.2d at 587-88.

Here, Plaintiff has made no allegations and has introduced no evidence that Defendants deceived or misrepresented a material fact to him, inducing him to retire. Rather, Plaintiff claims only that his retirement was the product of coercion or duress.

In determining whether a retirement was involuntary due to coercion or duress, the Court is to consider the following factors: (1) whether the employee was presented with an alternative to retirement; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee had a reasonable time to choose; (4) whether the employee was permitted to select the effective date of retirement; and (5) whether the employee had the advice of counsel. *Hargray*, 57 F.3d at 1568; *Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 372 (E.D. Pa. 2003); *O'Connell*, 79 F. Supp. 2d at 533.  After analyzing these factors, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether his retirement was the product of coercion or duress, and thus involuntarily procured.  As such, the Court will grant summary judgment in Defendants' favor.

First, while Plaintiff argues that Defendants forced his hand, Plaintiff was presented with an alternative to retirement, albeit an unpleasant one – Plaintiff could have accepted a demotion from Assistant Fire Chief to private.  Consequently, Plaintiff's retirement was voluntary. *Ballentine v. Dep't of Justice*, 884 F.2d 1399 (Fed. Cir. 1989) (Table) (per curiam), *available at* 1989 WL 90751 (retirement was voluntary where employee was presented with choice of either retiring or accepting a demotion) (citing *Christie*, 518 F.2d at 587); *Filliben v. Dep't of Navy*, 34 M.S.P.R. 31, 34 (1987) (choice

between demotion and resignation does not render a resignation involuntary).[2]

Second, Plaintiff understood the nature of the choice put to him. The record demonstrates that Plaintiff was keenly aware of his options, as well as their potential ramifications. Plaintiff knew that, if he chose to retire, he would do so at a higher pension because his pension would be based upon his Assistant Fire Chief's salary. Plaintiff also knew that, if he were ultimately demoted to the lower-paying position of private, his pension would be based upon this reduced level of pay. Plaintiff chose to retire in order to protect his higher pension. Consequently, the Court concludes that Plaintiff understood the nature of the choice given him as well as the ramifications of his decision to retire.

Third, Plaintiff had a reasonable period of time in which to decide whether to retire. The Leighton Letter was dated November 26, 2003. Plaintiff's Retirement Letter was dated February 27, 2004. In addition, Plaintiff had heard rumors about Mayor Leighton's intent to shake up the Fire Department during the Spring of 2003. As such, Plaintiff had more than three months to consider his decision. While Plaintiff stated in his deposition that Chief Lisman pressured him to retire during their February conversation, with Lisman even offering to type up a letter of retirement for Plaintiff to sign, Plaintiff did not succumb to Lisman's pressure. Afterwards, Plaintiff even filed grievances with Local 104 and waited for their resolution. After receiving an answer from the City on February 19, 2004

---

[2] It appears that Plaintiff even possessed a third option – Plaintiff could have stood pat. Mayor Leighton did not appoint Plaintiff's replacement until July 22, 2004, nearly five months after Plaintiff's retirement. (Makar Dep. 65:7-10; City of Wilkes-Barre Office of the Mayor, Executive Order No. 47 of 2004, dated July 22, 2004, Doc. 87-6 at 24.) As such, Plaintiff may have been able to remain as Assistant Fire Chief until that time. Plaintiff could have at least remained as an Assistant Fire Chief past the date of his retirement. Plaintiff could have waited for his demotion to private, a demotion he alleges was sure to come, and then prosecute a grievance with Local 104 under the CBA. However, Plaintiff decided against this option, instead choosing to preempt his allegedly impending demotion by retiring.

that his grievance was without merit because he still occupied the position of Assistant Fire Chief, Plaintiff waited more than a week before submitting his Retirement Letter on February 27, 2004.  Viewing all of these circumstances, the Court concludes that Plaintiff had a reasonable period of time in which to make an informed decision to retire.

Fourth, Plaintiff had control over the effective date of his retirement.  There is no evidence in the record suggesting that Plaintiff was given a deadline to make his decision.  To be sure, Mayor Leighton did not appoint Plaintiff's replacement until July 22, 2004, nearly five months after Plaintiff's retirement. (Makar Dep. 65:7-10; City of Wilkes-Barre Office of the Mayor, Executive Order No. 47 of 2004, dated July 22, 2004, Doc. 87-6 at 24.)  As such, it appears that Plaintiff could have remained in his position as Assistant Fire Chief until that time.  At the least, Plaintiff could have remained in his position as Assistant Fire Chief past February 28, 2004, waited for his allegedly impending demotion, and then challenged it through the union grievance procedure.  Instead, Plaintiff chose to retire, effective February 28, 2004.  As such, the Court concludes that Plaintiff controlled the effective date of his retirement.

Lastly, Plaintiff does not appear to have had the advice of counsel.  However, Plaintiff has failed to present any evidence of how the advice of counsel would have altered his decision to retire.  As such, this factor does not weigh in Plaintiff's favor. *See Speziale*, 266 F. Supp. 2d at 374.

Having fully addressed the five factor test set forth in *Hargray* and employed in *O'Connell* and *Speziale*, the Court concludes that there is no genuine issue of material fact as to whether Plaintiff's retirement was the product of coercion or duress on the part of Defendants.  Even when viewing the evidence in the light most favorable to Plaintiff,

the Court finds that Plaintiff was presented with at least two options – accept a demotion to private or retire. "Resignations obtained in cases where an employee is faced with unpleasant alternatives are nevertheless voluntary because 'the fact remains that plaintiff had a choice.'" *Hargray*, 57 F.3d at 1568 (quoting *Christie*, 518 F.2d at 587). Here, Plaintiff has failed to present evidence that his choice between these two unpleasant alternatives was not, in fact, a choice. He has therefore failed to rebut the presumption that his retirement was voluntary. Defendants are thus entitled to summary judgment on Plaintiff's section 1983 constructive discharge claim.[3] Plaintiff's motions for summary judgment will be denied.

## II. Plaintiff's State Law Claims

Whereas Plaintiff's now dismissed federal law claims were the bases for subject matter jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Local 104 for breach of a union's duty of fair

---

[3] Because the Court concludes that Plaintiff voluntarily relinquished any property interest in his public employment, the Court need not address in depth the issue of whether the grievance procedures available to him provided him with due process of law. The Court notes that the United States Court of Appeals for the Third Circuit has repeatedly held that, "in cases in which 'a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, . . . those procedures satisfy due process requirements.'" *Leheny*, 183 F.3d at 228. In the present case, Plaintiff's employment was governed by the CBA between Local 104 and the City. The CBA included a grievance procedure providing for successive appeals to higher levels within the Fire Department, then to the Mayor, and ultimately to an arbitrator. (Article 16 of the CBA, Doc. 87-14 at 17-18.) Such a process has been held to meet the requisite due process requirements in the public employment context. *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983) (stating that right to proceed to arbitration satisfies due process even if earlier grievance hearings were inherently biased). Plaintiff did, in fact, file a grievance via those procedures, which was subsequently denied by Chief Lisman because Plaintiff had not yet been demoted. Plaintiff then abandoned his grievance, having not grieved to the Mayor, which was the next step in the CBA grievance procedure. Also, the CBA grievance procedure remained available to Plaintiff to challenge his demotion if and when he ultimately were demoted. However, Plaintiff chose to retire rather than stand pat, wait for the demotion he alleges was a foregone conclusion, and fight. Having not availed himself of the constitutionally adequate process that was available to him under the CBA, Plaintiff could not now complain that he was deprived of due process.

representation and breach of contract. 28 U.S.C. § 1367(c) (a federal district court may decline to exercise supplemental jurisdiction over state law claims when the court has dismissed all claims over which it has original jurisdiction); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").  Accordingly, the Court will dismiss Counts II and III of Plaintiff's Amended Complaint without prejudice.

## CONCLUSION

For the above stated reasons, the Court will: (1) grant Defendants' motions for summary judgment as to Count I of Plaintiff's Amended Complaint; (2) dismiss Counts II and III of Plaintiff's Amended Complaint without prejudice; and (3) deny Plaintiff's motions for summary judgment.

An appropriate Order will follow.


 December 18, 2006                                         /s/ A. Richard Caputo
Date                                                                 A. Richard Caputo
                                                                         United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS E. KOSCIOLEK, | |
| Plaintiff, | CIVIL ACTION NO. 3:04-CV-1920 |
| v. | (JUDGE CAPUTO) |
| WILKES-BARRE FIRE FIGHTERS ASSOCIATION LOCAL 104, et al., | |
| Defendants. | |

## ORDER

**NOW**, this   18th   day of December, 2006, **IT IS HEREBY ORDERED** that:

(1) Defendants City of Wilkes-Barre, Thomas M. Leighton, Jacob Lisman, and Wilkes-Barre Fire Fighters Local 104, International Association of Fire Fighters, AFL-CIO's Motions for Summary Judgment (Docs. 71, 76) as to Count I of Plaintiff's Amended Complaint (Doc. 5) are **GRANTED**.

(2) Plaintiff's Motions for Partial Summary Judgment (Docs. 61, 64) are **DENIED**.

(3) Counts II and III of Plaintiff's Amended Complaint (Doc. 5) are **DISMISSED** without prejudice.

(4) The Clerk of the Court shall mark this case as **CLOSED**.

        /s/ A. Richard Caputo
        A. Richard Caputo
        United States District Judge